IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PHILDER DAMBREVILLE, | ) Case No. 4:25-cv-00514-SMR-SBJ |
| Petitioner, | ) |
| v. | ) ORDER ON MOTION FOR |
| | ) PRELIMINARY INJUNCTION |
| KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security, PAMELA BONDI, in her official capacity as United States Attorney General, SIRCE OWEN, in her official capacity as Director of Executive Office for Immigration Review, TODD LYONS, in his official capacity as Director of Immigration and Customs Enforcement, DAVID EASETERWOOD, in his official capacity as St. Paul ICE Field Office Director, CORY WILLIAMS, in his official capacity as Polk County Jail Administrator, and KEVIN SCHNEIDER, in his official capacity as Polk County Sheriff, | ) |
| Respondents. | ) |

Petitioner Philder Dambreville, a noncitizen in Immigration and Customs Enforcement ("ICE") custody, seeks a writ of habeas corpus and preliminary injunctive relief. Petitioner argues that he is entitled to immediate release or a bond hearing under 8 U.S.C. § 1226(a) but has been wrongly subjected to mandatory detention and denied a bond hearing under 8 U.S.C. § 1225(b)(2)(A). The issue is straightforward: Does Section 1225(b)(2)(A) require mandatory detention for a person who entered the United States nearly two years ago, has been residing here since, and was initially released? It does not. Petitioner's motion for a preliminary injunction is

1

GRANTED in part and DENIED in part. The Court orders Respondents to provide a bond hearing within seven days.

## I. BACKGROUND

The facts are undisputed. Petitioner is a native and citizen of Haiti who entered the United States on January 9, 2024, at Brownsville, Texas. [ECF No. 1 ¶ 2]. He applied for admission without valid documentation. *Id.* ¶ 3. Immigration officials allowed him to enter and placed him in removal proceedings. *Id.* ¶ 5. Petitioner was released and has resided in the United States for over two years. *Id.* ¶ 20.

On November 17, 2025, Petitioner was arrested on state criminal charges—Interference with Official Acts and Public Intoxication. *Id*. ¶ 8. The State agreed to dismiss the interference charge, and Petitioner pleaded guilty to Public Intoxication. *Id.* ¶ 9.

ICE then detained Petitioner. *Id.* ¶ 10. Petitioner claims ICE acted "without any changes in circumstances" and without requesting that the Immigration Court modify his custody status. *Id.* Rather, "ICE authorized this change solely based on Respondents' change in policy." *Id.* That policy—announced in an ICE memorandum dated July 8, 2025—reinterprets the immigration detention statutes to treat all noncitizens who entered without admission as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.* ¶¶ 1, 59.

Section 1225(b)(2)(A) requires detention for an "applicant for admission" who is "seeking admission." 8 U.S.C. § 1225(b)(2)(A). Under that provision, the noncitizen must remain in custody throughout removal proceedings. *Id*. No bond hearing is available. By contrast, Section 1226(a) authorizes discretionary detention and permits release on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). Petitioner alleges that he is governed by Section 1226, not

Section 1225, and that Respondents' contrary interpretation "violates the plain language of the INA and its implementing regulations." [ECF No. 1 ¶ 11].

Petitioner further alleges that for decades, immigration authorities treated individuals in his position—those who entered the United States without admission but were subsequently arrested within the country—as eligible for bond under Section 1226(a). *Id.* ¶¶ 57–58. He asserts that Respondents' new policy reverses this longstanding practice. *Id.* ¶¶ 59–60.

On September 5, 2025, the Board of Immigration Appeals ("BIA") concluded that Immigration Judges lack authority to conduct bond hearings for noncitizens "present in the United States without admission." *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (B.I.A. 2025); *see also* [ECF No. 1 ¶ 65]. Petitioner challenges this interpretation and seeks either immediate release or, at minimum, a bond hearing under Section 1226(a). [ECF No. 1 ¶¶ 45–48].

## II.   DISCUSSION

A preliminary injunction is warranted when the movant establishes: (1) a likelihood of success on the merits; (2) a threat of irreparable harm; (3) that the balance of harms favors the movant; and (4) that the injunction serves the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "No single factor" is dispositive but likelihood of success on the merits is "most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citations omitted).

### A.   Jurisdiction

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and 1252(b)(9). These arguments fail. The Supreme Court has narrowly construed Section 1252(g). It bars challenges to only three decisions: initiating removal proceedings, deciding removal cases, and executing removal orders. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Reno v. America-*

*Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Petitioner's challenge falls outside this narrow scope. He does not contest the commencement, adjudication, or execution of his removal case. He challenges only his detention without a bond hearing. Such challenges are collateral to removal proceedings and thus fall outside Section 1252(g)'s bar. *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) (holding detention challenges are "independent of, and collateral to, the removal process"); *accord Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) (noting bond hearings are "decided separately, appealed separately," and maintain separate records); *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *4 (E.D. Va. Sept. 19, 2025).

Section 1252(b)(9) channels challenges to final removal orders to the courts of appeals. But Petitioner does not challenge a removal order; no such order exists. He challenges only his ongoing detention. The Supreme Court has held that Section 1252(b)(9) does not bar jurisdiction over challenges to ongoing detention that are collateral to removal proceedings. *See Jennings*, 583 U.S. at 292–95; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). The Court has jurisdiction.

### B. Likelihood of Success on the Merits

Petitioner is likely to succeed on his claim that he is governed by Section 1226, not Section 1225, and is therefore entitled to a bond hearing.

#### 1. Statutory Text and Structure

The Immigration and Nationality Act ("INA") distinguishes between noncitizens "seeking admission" and those "already in the country." *Jennings*, 583 U.S. at 289. Section 1225(b) governs detention of the former; Section 1226(a) governs detention of the latter. *Id.*

Section 1225(b)(2)(A) requires mandatory detention when three conditions are met: the individual must be (1) an "applicant for admission;" (2) "seeking admission;" and (3) determined by an examining officer to be not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C.

§ 1225(b)(2)(A). The statute broadly defines "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1).

Respondents' position is that Petitioner, having entered without admission, is an "applicant for admission" who is necessarily "seeking admission" and thus subject to mandatory detention under Section 1225(b)(2)(A). This statutory interpretation erases the distinction between "applicant for admission" and "seeking admission." If every "applicant for admission" were automatically "seeking admission," the latter phrase would serve no purpose. That cannot be right. A court must give effect to all of a statute's provisions. No part should be rendered "inoperative or superfluous." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

The phrase "seeking admission" describes present-tense conduct—attempting to enter the country. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218–19 (D. Mass. 2025). It does not apply to someone who entered nearly two years ago and has lived here since. That person is not "seeking admission." He is already here.

This reading harmonizes the statutory scheme. Section 1225 applies at the border, where officers screen arriving noncitizens. Section 1226 applies to individuals who are arrested within the United States and face removal proceedings. Petitioner falls squarely within Section 1226's scope. He was arrested in Iowa—not at the border—nearly two years after entering the country. [ECF No. 1 ¶¶ 2, 8].

Respondents' reading would strip Section 1226(a) of nearly all practical effect. If every noncitizen who entered without inspection faces mandatory detention under Section 1225(b)(2)(A), Section 1226(a)'s bond provisions would be a nullity. This interpretation creates particular tension with the Laken Riley Act. *See* Pub. L. No. 119-1, 139 Stat. 3 (2025).

That statute amended Section 1226(c) to require mandatory detention for noncitizens charged with or convicted of certain offenses. But under Respondents' view, anyone covered by the Laken Riley Act would already be subject to mandatory detention under Section 1225(b)(2)(A) based solely on their mode of entry—rendering Congress' recent amendment unnecessary. Courts avoid interpretations that treat statutory language as surplusage. *See Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017) (rejecting interpretation that would render statutory language superfluous). The better reading gives independent effect to both provisions: Section 1225(b)(2)(A) governs those actively seeking admission at the border, while Section 1226 governs those arrested within the United States.

The statutory history confirms this reading. Section 1226's predecessor statute governed all deportation proceedings for noncitizens arrested within the United States and included discretionary release on bond. *See* 8 U.S.C. § 1252(a)(1) (1994). When Congress enacted Section 1226, it declared that the provision "restates the current provisions" regarding "the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229 (1996); [ECF No. 1 ¶ 82]. Congress thus intended Section 1226 to carry forward the prior framework, under which noncitizens arrested in the country—even those who entered without inspection—were eligible for bond. [ECF No. 1 ¶¶ 80–83].

Petitioner also points to implementing regulations issued after the INA's enactment. Those regulations stated that noncitizens present without admission or parole, including those who entered without inspection, "will be eligible for bond and bond redetermination." 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997); [ECF No. 1 ¶ 57]. This regulatory interpretation, issued

contemporaneously with the statute and maintained for decades, reinforces the conclusion that Section 1226 governs Petitioner's detention. [ECF No. 1 ¶ 58].

### 2. *Matter of Yajure Hurtado*

The BIA's recent decision in *Matter of Yajure Hurtado* does not alter this analysis. The BIA concluded that all noncitizens present in the United States without admission are "applicants for admission" subject to mandatory detention under Section 1225(b)(2)(A). 29 I. & N. Dec. at 220. For the reasons explained above, this interpretation conflicts with the statutory text. It treats "applicant for admission" and "seeking admission" as synonymous, ignoring the separate work that "seeking admission" must do. It also fails to account for the practical implications of rendering Section 1226 and the Laken Riley Act superfluous.

*Hurtado* does not bind the Court. The BIA's interpretations merit respect, but not when they rest on an implausible reading of unambiguous statutory text. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (longstanding executive practice can inform statutory meaning). The Court is not persuaded by the BIA's reasoning.

### 3. Weight of Authority

Petitioner's position enjoys overwhelming support. As of this writing, courts have addressed this issue in over 362 cases heard by over 160 different judges. Petitioners have prevailed in nearly all of them. *See Barco Mercado v. Francis*, --- F. Supp. 3d ----, 2025 WL 3295903, at *4 (S.D. N.Y. Nov. 26, 2025) (collecting cases). Within this district, Judge Ebinger and Judge Locher have both concluded that noncitizens in Petitioner's position are governed by Section 1226 and entitled to bond hearings. *See Hernandez Marcelo v. Trump*, --- F. Supp. 3d --- 2025 WL 2741230, at *7 (S.D. Iowa Sept. 10, 2025); *Helbrum v. Williams Olson*, Case No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *4–7 (S.D. Iowa Sept. 30, 2025); *Barrajas v. Noem*,

Case No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *4–5 (S.D. Iowa Sept. 23, 2025). The Court joins that consensus.

### C. Remaining Dataphase Factors

The remaining *Dataphase* factors favor Petitioner. He faces irreparable harm from loss of liberty. Freedom from imprisonment "lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Continued detention without a bond hearing inflicts a constitutional injury that money damages cannot remedy.

The balance of harms tips in Petitioner's favor. A bond hearing imposes no burden on the Government beyond compliance with statutory requirements. If the Immigration Judge concludes that Petitioner poses a flight risk or danger, he may be kept in custody. But the Government has no interest in detaining someone without the process that Congress prescribed. *Cf. Barrajas*, 2025 WL 2717650, at *6.

The public interest supports preliminary relief. The public has a strong interest in protecting due process. *Hasan*, 2025 WL 2682255, at *13. And it is indisputable the public benefits when federal agencies follow the law.

### D. Appropriate Remedy

Petitioner requests either immediate release or a bond hearing. The Court orders a bond hearing but declines to order release.

Although Petitioner requests outright release, the Court concludes a bond hearing is the appropriate remedy. Section 1226(e) constrains the Court's authority to second-guess Executive Branch detention decisions, providing that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." 8 U.S.C. § 1226(e). Section 1226(e) does not eliminate habeas jurisdiction. The Supreme Court has confirmed that

federal courts retain authority to review whether detention complies with statutory requirements. *Demore v. Kim*, 538 U.S. 510, 517 (2003). But the provision reflects Congress's intent to preserve Executive discretion over individual custody determinations. The Court's role is to ensure Petitioner receives the procedural protections Congress mandated, not to make the substantive custody decision in the Immigration Judge's stead. *Cf. Helbrum*, 2025 WL 2840273, at *7 (declining to act as "Immigration Judge" and decide custody).

Section 1226(a) entitles Petitioner to a bond hearing before an Immigration Judge, who will assess flight risk and dangerousness based on an individualized review of the evidence. That executive officer, not the Court, should make the initial custody determination. Accordingly, the Court orders Respondents to provide a bond hearing but declines to order Petitioner's immediate release.

### E. Redetention Claims

Petitioner alleges ICE redetained him without making an individualized determination of flight risk or dangerousness. [ECF No. 1 ¶¶ 129–34]. The claim has merit.

When ICE released Petitioner into removal proceedings, he acquired a liberty interest in remaining free. That interest persists even though ICE retains discretion to revoke release. The manner of redetention matters. If ICE acted without any individualized assessment—relying solely on a blanket policy reinterpretation—due process requires correction.

The appropriate remedy is a bond hearing at which the Immigration Judge determines whether continued detention is justified. But the allocation of the burden at that hearing must account for the circumstances of Petitioner's redetention. When the Government seeks to continue detaining someone it previously released, fairness demands that the Government shoulder the burden of justifying that detention.

The Court therefore orders that at the bond hearing, the Government must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. This allocation reflects settled practice in redetention cases. *See Zafra v. Noem*, EP-25-CV-00541-DB, 2025 WL 3239526, at *5 (W.D. Tex. Nov. 20, 2025); *Morgan v. Oddo*, Civil Action No. 3:24-cv-221, 2025 WL 2653707, at *1 (W.D. Pa. Sept. 16, 2025). It also accounts for the severity of the liberty interest at stake and ensures that Petitioner does not bear the risk of error when the potential loss of liberty is substantial.

### III.    CONCLUSION

For the reasons stated above, the Motion for Preliminary Injunction is GRANTED in part and DENIED in part. [ECF No. 2]. Respondents shall provide Petitioner with a bond hearing before the Executive Office for Immigration Review within seven days of this Order. The bond hearing shall be conducted under 8 U.S.C. § 1226(a), and the Immigration Judge shall make an individualized determination as to whether Petitioner should be released on bond or detained pending completion of removal proceedings.

IT IS SO ORDERED.

Dated this 12th day of January, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT